George GREENO, Jr., Plaintiff,

v.

CLARK EQUIPMENT COMPANY,
Defendant.

Civ. No. 1377.

United States District Court
N. D. Indiana,
Fort Wayne Division.

Jan. 15, 1965.

**428**

Sam Fogel, Stamm & Fogel, Fort Wayne, Ind., for plaintiff.

Otto E. Grant, Jr., Barrett, Barrett & McNagny, Fort Wayne, Ind., for defendant.

ESCHBACH, District Judge.

This products liability action was commenced by the filing of an original complaint in three counts, federal jurisdiction being based on diverse citizenship. Plaintiff's original three counts were grounded in breach of implied warranty, negligence, and breach of express warranty, respectively. Thereafter, with leave of Court, plaintiff amended his original complaint by the addition of Counts Four and Five. Bared of the usual formalities, plaintiff's additional counts are grounded upon theories of strict liability and wilful and wanton misconduct, respectively. Defendant has filed timely motions to dismiss Counts Four and Five from plaintiff's complaint on the grounds that each fails to state a claim upon which relief can be granted. Addressing first the defendant's motion to dismiss Count Four, the precise question involved has never been presented to the Indiana courts, and state guidelines are not easily ascertainable in this rapidly developing field of the law, commonly designated "Products Liability."

Plaintiff, in Count Four, contends essentially that the defendant designed, manufactured and sold a fork lift truck which was defective. The specific defects allegedly existing are not relevant to the question now before the Court. In Count Four it is alleged that Materials Handling Equipment Corporation, an Indiana corporation not a party in this litigation, leased to Dana Corporation, plaintiff's employer, a certain fork lift truck, designed, manufactured and sold by defendant, Clark Equipment Company. There is no allegation as to how Materials Handling Equipment Corporation acquired the truck nor any alleged relationship between it and Clark Equipment Company. The fork lift truck in question is alleged to have been sold by defendant in a "defective condition," and that while using it in the normal course of his employment, plaintiff received serious permanent injuries as a proximate result of an industrial accident caused by one or another of the alleged defects. Unlike Count One, based on implied warranty, Count Four contains no allegation of privity of contract or of any other relationship between Clark Equipment Company and Materials Handling Equipment Corporation or between Clark and plaintiff, except that Clark manufactured and plaintiff used the equipment. In his brief, plaintiff contends that Count Four as alleged is sufficient in law to support recovery upon the theory of "Strict Liability" in the field of products liability and as recognized by the Restatement (Second), Torts § 402A (Approved May 1964). Unquestionably, the allegations of Count Four of plaintiff's complaint meet the standards imposed by the Restatement, supra. The remaining and more difficult question is whether "Strict Liability", so-called, as understood by this court and explained infra, is properly the law of Indiana. This court now concludes that it is.

While strict liability in certain forms is not a stranger to the law of Indiana, notably in workmen's compensation and as ultra hazardous activity following Rylands v. Fletcher, 3 H.C. 774 (1865); L.R. 1 Ex. 265 (1866); L.R. SH.L. 330 (1868), it is of recent vintage in the area of products liability. This opinion will consider the theory of strict liability only in the context of products liability. When so confined, its least ambiguous definition appears in Restatement (Second), Torts § 402A (Approved May 1964), set out as follows:

"§ 402A. Special Liability of Seller of Product for Physical Harm to User or Consumer.

"(1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer

or to his property, is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if

"(a) the seller is engaged in the business of selling such a product, and

"(b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.

"(2) The rule stated in Subsection (1) applies although

"(a) the seller has exercised all possible care in the preparation and sale of his product, and

"(b) the user or consumer has not bought the product from or entered into any contractual relation with the seller."

Without attempting an exhaustive explanation, it may fairly be said that the liability which this section would impose is hardly more than what exists under implied warranty when stripped of the contract doctrines of privity, disclaimer, requirements of notice of defect, and limitation through inconsistencies with express warranties. Greenman v. Yuba Power Prods., Inc., 59 Cal.2d 67, 27 Cal.Rptr. 697, 377 P.2d 897 (1963); Putman v. Erie City Manufacturing Co., 338 F.2d 911 (5th Cir., November 30, 1964), approving of Judge Traynor's concurring opinion in Escola v. Coca-Cola Bottling Co., 24 Cal.2d 453, 150 P.2d 436 (1944); Restatement, supra, comment at 349. The conditions of liability which may not be self-evident in the above text are a "defective condition" at the time the product leaves the seller's control and which causes harm to a user or consumer. A "defective condition" is a condition not contemplated by the consumer/user and which is "unreasonably dangerous" to him or his property, that is, more dangerous than would be contemplated by the ordinary consumer/user with the ordinary knowledge of the community as to its characteristics and uses. Restatement, supra, comment at 351–52. An axe is not unreasonably dangerous because, as in negligence law, users would contemplate the obvious dangers involved. But a farm combine with a weak lid over the auger would constitute an unreasonable danger because such a danger is beyond the contemplation of ordinary users. The same basis applies in Indiana negligence law for the determination of whether a latent defect exists. J. I. Case Co. v. Sandefur, 197 N.E.2d 519 (Ind. 1964). The difference between strict liability and the law of Sandefur is that in the former the care or lack of care of the manufacturer in causing a defect is irrelevant. But the plaintiff-user's conduct is very much in question under the doctrine of strict liability. Recovery in strict liability is not conditioned on privity of contract, or reliance or notice to the seller of a defect, and the seller cannot disclaim or by contract alter a duty which the law would impose upon him. Nor can inconsistent express warranties dilute the seller's duty to refrain from injecting into the stream of commerce goods in a "defective condition." Greenman v. Yuba Power Prods., Inc., supra; Henningsen v. Bloomfield Motors, Inc., 32 N.J. 358, 161 A.2d 69, 75 A.L.R.2d 1 (1960); Restatement, supra, comment at 355–56. Neither would contributory negligence constitute a defense, although use different from or more strenuous than that contemplated to be safe by ordinary users/consumers, that is, "misuse," would either refute a defective condition or causation. "Misuse" would include much conduct otherwise labeled contributory negligence and would constitute a defense. Incurring a known and appreciated risk is likewise a defense. Restatement, supra, comment at 356.

This is the doctrine of strict liability which this Court understands the plaintiff to champion and which Count Four alleges. This court, sitting with diversity jurisdiction, is committed to Indiana law. Erie Railroad Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). But there are no reported Indiana decisions on the question of strict liability, or even on the necessity

of privity to recovery in implied warranty. After a discussion of the Indiana authorities and what they were purported to have held, this court, in Hart v. Goodyear Tire & Rubber Co., 214 F.Supp. 817, 819 (N.D.Ind.1963), stated, "The conclusion, therefore, is inescapable that Indiana has never directly or by fair implication committed itself to the absolute principle * * * that privity is essential to sustain a recovery for breach of warranty." Therefore, the court must look to all available data and adopt the rule which it believes the Indiana Supreme Court would choose. West v. American Telephone & Telegraph Co., 311 U.S. 223, 237, 61 S.Ct. 179, 85 L.Ed. 139 (1940); See Putman v. Erie City Manufacturing Co., supra, 338 F.2d at 917–918. Indiana would unquestionably adopt the best reasoned and most intrinsically fair position, and presumably a determination by this court on such a basis would find approval with the Indiana Supreme Court. See Deveny v. Rheem Manufacturing Co., 319 F.2d 124, 129–130 (2nd Cir. 1963).

While at one time the relevant law of Indiana generally required privity of contract in product liability cases based on negligence of the manufacturer or seller, Travis v. Rochester Bridge Co., 188 Ind. 79, 122 N.E. 1 (1919), privity was not required where the product was "imminently dangerous." Travis v. Rochester Bridge Co., supra; Holland Furnace Co. v. Nauracaj, 105 Ind.App. 574, 14 N.E.2d 339 (1938). The concept of "imminently dangerous" was an amorphous one, and even included the undrained pipes of a discontinued heating system which caused extensive water damage to the property of an adjoining tenant when ice burst the pipes. Peru Heating Co. v. Lenhart, 48 Ind.App. 319, 95 N.E. 680 (1911). Privity in negligence actions was finally put to rest in Coca-Cola Bottling Works of Evansville v. Williams, 111 Ind.App. 502, 37 N.E.2d 702 (1941), and J. I. Case Co. v. Sandefur, supra. Elliott v. General Motors Corp., 296 F.2d 125 (7th Cir. 1961); McCloud v. Leavitt Corp., 79 F.Supp. 286, 291 (E.D.Ill.1948). While the Indiana Supreme Court in Sandefur noted the *hidden nature* of the defect in the farm combine, there was no real limitation, since the defendant company could not have been negligent in manufacturing a product whose danger would be perceived and appreciated by all reasonable persons exercising ordinary care. It is not negligent for one to manufacture and sell an axe or power saw because the dangers are obvious and the manufacturer can reasonably expect others in the exercise of ordinary prudence to perceive and appreciate the dangers. But it might be negligent to fashion the axe or saw from defective metal, undetectable by prudent users. "Hidden" is merely a concise way of saying that the danger could not reasonably be perceived and appreciated. MacPherson v. Buick Motor Co., 217 N.Y. 382, 111 N.E. 1050, L.R.A.1916F, 696 (1916), has been embraced in this state, and in doing so the Indiana court in Sandefur wrote:

> "As stated by the leading authorities, public policy has compelled this gradual change in the common law because of the industrial age where there is no longer the usual privity of contract between the user and the maker of a manufactured machine."

These Indiana cases represent a trend toward permitting a product user to recover from a remote manufacturer for injuries inflicted by the product's defective condition. When coupled with the application of res ipsa loquitur, as in Coca-Cola Bottling Works of Evansville v. Williams, supra, the plaintiff need only prove the bottle to be unaltered after leaving the manufacturer in order to recover for injuries sustained by "drinking" concrete chips from the bottle. Such a doctrine, basing an inference of negligent manufacture on the existence of a defect when the product left the manufacturer's control, is hardly different from the theory of strict liability outlined above. In both, the defect must exist when the product leaves the seller. The usual contract doctrines, such as disclaimer and privity, are inapplicable in

both, and the defendant may have a very difficult task of proving manufacture and inspection free of negligence. In Coca-Cola Bottling Works of Evansville v. Williams, supra, plaintiff recovered in spite of extensive proof by defendant of its care in bottling. 1 Frumer & Friedman, Products Liability Para. 22.01 [3] [f], p. 607 explains " * * * proof that a manufacturer exercised due care in his manufacturing process will generally not suffice to rebut the plaintiff's submissible case of negligence arising out of the application of res ipsa or its equivalent." Consequently, the Indiana cases, going back 25 years, are not in any serious conflict with such a recovery as the plaintiff seeks in the instant case. In J. I. Case Co. v. Sandefur, supra, the Indiana Supreme Court recognized the change in public policy brought on by the changes in industry and commerce.

■■ It is generally recognized that implied warranty is more properly a matter of public policy beyond the power of the seller to alter unilaterally with disclaimers and inconsistent express warranties. Putman v. Erie City Manufacturing Co., supra, 338 F.2d at 913; Greenman v. Yuba Power Prods., Inc., supra, 27 Cal.Rptr. at 701, 377 P.2d at 901; Restatement, supra, comment at 355. Where there is implied in law a certain duty to persons not in contract privity, it seems preposterous that the seller should escape that duty by inserting into a non-contractual relationship a contractual disclaimer of which the remote injured person would be unaware. Even as between parties to a contract, where the law would imply in a sale the reasonable fitness of the product for ordinary purposes, it seems unconscionable that the seller should by disclaimers avoid the duty of selling merchantable products or shift the risk of defect, unless the total circumstances of the transaction indicate the buyer's awareness of defects or acceptance of risk. This warranty imposed by law, irrespective of privity and based on public policy, is more aptly called "strict liability." Putman v. Erie City Manufacturing Co., supra, 338 F.2d 920;

Greenman v. Yuba Power Prods., Inc., supra, 27 Cal.Rptr. at 701, 377 P.2d at 901; Goldberg v. Kollman Instrument Corp., 12 N.Y.2d 432, 240 N.Y.S.2d 592, 191 N.E.2d 81 (1963).

As the Indiana courts have escaped the rigors of privity in negligence through the doctrine of "imminently dangerous," others courts have invoked various exceptions which in time have devoured the requirement of privity in both negligence and implied warranty. Some cases, like Decker & Sons, Inc. v. Capps, 139 Tex. 609, 164 S.W.2d 828, 142 A.L.R. 1479 (1942), hold that privity is not required in a products liability case based on implied warranty, while others reach the same result by expanding the old common law concept of privity. Hart v. Goodyear Tire & Rubber Co., supra. Food and beverages are well known products where privity is no longer required. Williams v. Paducah Coca-Cola Bottling Co., 343 Ill.App. 1, 98 N.E.2d 164 (1951); Ward Baking Co. v. Trizzino, 27 Ohio App. 475, 161 N.E. 557 (1928); 1 Frumer & Friedman, Products Liability, Par. 23.01 [1] [a], p. 622. In the recent case of Putman v. Erie City Manufacturing Co., supra, the Court of Appeals for the Fifth Circuit extended to all defective products unreasonably dangerous to the user the reasoning of Decker & Sons, Inc. v. Capps, supra. The latter was an implied warranty food case which dispensed with privity on the grounds that implied warranty arises from public policy rather than contract and that the rights and duties it creates cannot be limited to the contracting parties. Henningsen v. Bloomfield Motors, Inc., supra, did likewise, stating at p. 379 of 32 N.J., at p. 80 of 161 A.2d, at p. 17 of 75 A.L.R.2d,

"The limitations of privity in contracts for the sale of goods developed their place in the law when marketing conditions were simple, when maker and buyer frequently met face to face on an equal bargaining plane and when many of the products were relatively uncomplicated and conducive to inspection by a buyer

competent to evaluate their quality. See Freezer, 'Manufacturer's Liability for Injuries Caused By His Products,' 37 Mich.L.Rev. 1 (1938). With the advent of mass marketing, the manufacturer became remote from the purchaser, sales were accomplished through intermediaries, and the demand for the product was created by advertising media. In such an economy it became obvious that the consumer was the person being cultivated. Manifestly, the connotation of 'consumer' was broader than that of 'buyer.' He signified such a person who, in the reasonable contemplation of the parties to the sale, might be expected to use the product. Thus, where the commodities sold are such that if defectively manufactured they will be dangerous to life or limb, then society's interests can only be protected by eliminating the requirement of privity between the maker and his dealers and the reasonably expected ultimate consumer."

The reasoning of Henningsen, of Spence v. Three Rivers Builders & Mason Supply, Inc., 353 Mich. 120, 90 N.W.2d 873 (1958), and of Putman, supra, and the many other cases striking down the requirement of privity in implied warranty seems eminently sound. As Judge Wisdom so aptly recognized in Putman, supra, at 919 of 338 F.2d, "Since 1958,[18] almost every court which has considered the question has expanded the doctrine of strict liability to cover all defective products, regardless of lack of proof of negligence.[19] " See footnotes 18 and 19. Various means have been applied to reach this result without naming the rule "strict liability" and without the furor which that label has created. In Gahimer v. Virginia-Carolina Chemical Corp., 241 F.2d 836, 842 (7th Cir. 1957), the Indiana Sales Act definition of a "buyer," which included a "buyer from a buyer," was the basis for the statement that the manufacturer's implied warranty extended to that ultimate consumer. If that conclusion was merely a narrow but just exception to the gener-

ally recognized limits of contract privity and was founded solely on contract doctrine, it could have been defeated by a manufacturer's disclaimer of liability. Surely, the mere addition of a disclaimer by the manufacturer made to its immediate buyer would not justify a different conclusion. This court in Hart v. Goodyear Tire & Rubber Co., supra, 214 F. Supp. at 819, an implied warranty action, found an employee of a corporate purchaser in privity with the seller by finding him a "legal successor in interest" under the Indiana Sales Act definition of a "buyer". Ind.Ann.Stat. Sec. 58–606 (Burns 1961). A similar technique had been applied in Peterson v. Lamb Rubber Co., 54 Cal.2d 339, 5 Cal.Rptr. 863, 353 P.2d 575 (1960), now replaced by the more forthright unanimous opinion by Judge Traynor in Greenman v. Yuba Power Prods., Inc., supra. In addition to these and the negligence exception of *imminently dangerous* and the *food and beverage* cases already mentioned supra, privity has been discarded in other areas enroute to a general abrogation of privity in implied warranty. Most notable are drugs, Gottsdanker v. Cutter Laboratories, 182 Cal.App.2d 602, 6 Cal.Rptr. 320, 79 A.L.R.2d 290 (1960); products for intimate bodily use, Lartique v. R. J. Reynolds Tobacco Co., 317 F.2d 19 (5th Cir. 1963); and products to be applied to the skin, hair or scalp (possibly within the previous category), Esborg v. Bailey Drug Co., 61 Wash.2d 347, 378 P.2d 298 (1963). The overthrow of privity became complete in Henningsen v. Bloomfield Motors, Inc., supra, and the cases following it.

The direction of the law is clear. Again drawing on the language of and authorities cited by Judge Wisdom in Putman, supra, at 919–920 of 338 F.2d, we find that "Part of the impetus has come from an almost unanimous call from the authorities in the field of torts.[20] " If the Restatement correctly states the conditions of recovery now in practice, let those elements have a fresh name and abandon the old entanglements of "warranty." Putman v. Erie City Man-

ufacturing Co., supra, 338 F.2d at 920; Greenman v. Yuba Power Prods., Inc., supra, 27 Cal.Rptr. at 701, 377 P.2d at 901, Goldberg v. Kollman Instrument Co., supra.

Already the Restatement, supra, is being followed and shaped. Putman, supra. The recent case of Delaney v. Towmotor Corp., 339 F.2d 4, (2d Cir., December 3, 1964), held the Restatement word "sells" is merely descriptive and that the product need not be *sold*, if it has been placed "in the stream of commerce by other means." The operator of a "demonstrator" model lift truck was injured when a defective overhead guard collapsed; facts somewhat similar to those at bar. The defendant manufacturer in the instant case is alleged to have sold the fork lift truck in question and the plaintiff's employer is alleged to have leased the equipment from a company other than the manufacturer. Thus, the Delaney issue is not before this court. It could not seriously be contended that the lease would prevent the instant plaintiff from being a consumer or user.

While offering a sound and cogent rationale, the Restatement, supra, would not achieve results which are substantially different than we now experience piecemeal and perchance. By other names, we have embraced such results in Coca-Cola Bottling Works of Evansville v. Williams, supra, Gahimer v. Virginia-Carolina Chemical Corp., supra, and Hart v. Goodyear Tire & Rubber Co., supra. Other jurisdictions, presented with the question, have gone further. In Anderson v. Linton, 178 F.2d 304, 309 (7th Cir. 1949), the court, without the aid of Iowa precedent, but with notable foresight, concluded that the Supreme Court of Iowa "would today adopt the modern rule," and not require privity in a negligence action. Since that decision, Iowa has even discarded privity in an implied warranty action by an automobile purchaser against its manufacturer and dealer. State Farm Mutual Automobile Ins. Co. v. Anderson-Weber Inc., 252 Iowa 1289, 110 N.W.2d 449 (1961). The Indiana

Supreme Court in Sandefur, supra, noted at p. 522 of 197 N.E.2d, "As so often happens in the development of the common law, eventually the exception becomes the rule, and that is what has happened during the last sixty years to the principle under consideration here."

The question is now squarely before this court and must be decided. It is perhaps fortuitous that the Indiana Supreme Court has not yet passed on this issue, but doubtlessly that forward-looking court would embrace the Restatement (Second), Torts § 402A, and the many recent cases and authors who have done likewise, as eminently just and as the law of Indiana today.

Accordingly, defendant's motion to dismiss Count Four is hereby denied.

The defendant's motion to dismiss Count Five for failure to state a claim upon which relief can be granted, filed October 22, 1964, must be denied. Plaintiff has fairly alleged facts which, if proved, would show that (a) injury to users of the fork lift truck in question was probable and not a mere likelihood, (b) defendant knew that such injury would probably result because of the manner of design or manufacture, and (c) defendant recklessly disregarded this great risk of harm, in particular by the failures and conduct alleged in Sub-sections A through O of Rhetorical Paragraph 2. The defendant is surely on notice of what plaintiff seeks to prove and has been favored with at least as much specificity as that recommended by Fed. R.Civ.P. Form 9.

There appears to be no reason why a manufacturer cannot act in reckless disregard of the rights of others. The fact that a manufacturer acts in relation to a great number of people and a great many individual products may make proof of wilful or wanton misconduct a difficult, if not impossible, matter, but only the adequacy of the pleadings is now before this court.

Accordingly, the defendant's motion to dismiss Count Five is hereby denied.